UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 04-226-DLB

NANCY CHANDLER, Individually and as
Executrix of the ESTATE OF FRANKLIN CHANDLER                    PLAINTIFF

vs.                           **OPINION & ORDER**

AMERICAN GUARANTEE AND LIABILITY
INSURANCE COMPANY                                               DEFENDANT

*****************************

This civil action involves, in part, a determination of whether underinsured motorist (UIM) coverage is afforded to the Estate of Franklin Chandler under a policy of insurance issued by Defendant to Chandler's employer. The parties have filed cross summary judgment motions on this issue. (Docs. #11 & #16) For the reasons set forth herein, the Court finds that coverage is implicated, and that Plaintiff is therefore entitled to summary judgment.

**FACTUAL[1] AND PROCEDURAL BACKGROUND**

Franklin Chandler was an employee of the Kentucky Department of Transportation (DOT). On August 18, 2003, Chandler and two coworkers, Fred Rice and Kevin Schneider, were working on Route 8 in Villa Hills, Kentucky. The three men had traveled to the area in a DOT work truck. Chandler drove the truck to the site, where their work that day was to install road signs. According to the testimony of Rice and Schneider, upon arrival to the area, they drove the roadway to determine appropriate locations for the signs before undertaking to install them. The installation process involved stopping the truck, exiting the vehicle, using a post driver to dig a hole for each sign post to be placed in the area,

---

[1]The parties have stipulated to certain facts (*see* Doc. #11, Ex. 1, Agreed Stipulations). The facts recited herein are from those stipulated, unless otherwise noted.

inserting a sign anchor or post, then sliding a sleeve to which the sign was affixed over the anchor and attaching it.  Once this was completed for a particular area, the crew got back in the truck, and drove the vehicle further up the road to the next location, where the process would be repeated.

Rice and Schneider testified that when out working a roadway they will typically pull off of the road onto the shoulder and stop the vehicle to work.  However, the route they were scheduled to work this particular morning was a narrow two-lane road with little, if any, shoulder area.  This necessitated they stop the truck either partially or completely blocking the travel lane.  As they worked at the roadside, the truck's engine was left running and its headlights, emergency flashers, strobe lights and lights atop the cab were all operative and blinking prior to this accident.  The crew members were also wearing reflective safety vests.

The accident giving rise to this suit occurred on August 18, 2003, shortly before 11:00 a.m.  The crew had installed signs at previous sites along Route 8 and had pulled up to the stretch of highway in question to continue the process.  Rice's recollection was that Schneider and Chandler had been using the post driver to dig the holes and place the anchors, while he put the sleeves and signs together.  Schneider recalls that he was using the post driver, while Chandler placed some of the anchors.  Both men testified that the three-man crew was in the process of wrapping up to head out for lunch.  Schneider went over the hillside to use the restroom, leaving the immediate area, and so he did not witness the accident.  When Schneider last saw Frank Chandler, he was standing near the driver-side rear of the truck watching traffic.  Rice testified that immediately prior to the accident he was standing at the passenger-side rear corner of the truck, with his back to traffic, assembling the remaining sleeves and signs to be installed in that area.  He said that, once finished, he was going to put the signs in the truck so that they could leave for lunch.  Rice

2

also placed Chandler at the driver's rear corner of the truck, watching traffic and "kind of flagging it" too. At that point a passenger vehicle crashed into the truck and Frank Chandler. Chandler, who was severely injured, was taken to the hospital, but died from his injuries the following day.

Nancy Chandler, decedent's wife and executrix of his estate, filed a state court suit against the driver of the passenger vehicle, Steve Stoinoff. The record does not reflect the current status of that proceeding. However, Stoinoff apparently has $100,000 in liability limits under his automobile insurance coverage, and the parties have stipulated in this case that the damages to Chandler's Estate exceed Stoinoff's liability limits.

This raises the question of whether any underinsurance coverage is available to Chandler's Estate. At the time of the accident, the Kentucky Department of Transportation had in place a policy of insurance issued to it by Defendant American Guarantee and Liability Insurance Company (American Guarantee), being policy number BAP 350 3303 02. The "Commonwealth of Kentucky - Various State Agencies" was the named insured on that policy. In exchange for a total premium payment in excess of $3.0 million, the policy provided various coverages for "covered autos." The parties have stipulated that the DOT truck driven by Frank Chandler that morning was covered by this policy. The American Guarantee policy at issue contains a "Kentucky Underinsured Motorists Coverage" endorsement. Although Plaintiff contends this coverage is implicated, Defendant disputes this. Plaintiff sued American Guarantee in state court, claiming the Estate was entitled to UIM coverage under the policy. That action was removed by American Guarantee to this Court, with subject matter jurisdiction based upon diversity of citizenship. As noted, both the Estate and American Guarantee each seek summary judgment on the UIM coverage question.

**ANALYSIS**

**1.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). This diversity case is governed by Kentucky's substantive law. In Kentucky, construction of an insurance contract provision is a question of law for the court unless disputed facts are involved. *Hanover Ins. Co. v. American Engineering Co.,* 33 F.3d 727, 730 (6th Cir. 1994). The provision at issue is reviewed with this standard in mind.

**2.     Was Chandler "occupying" the DOT truck for purposes of the UIM endorsement to the policy?**

The UIM coverage endorsement to the American Guarantee policy sets forth the parameters under which coverage is afforded. The endorsement provides coverage for "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle'. The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident'." As the parties have stipulated that Chandler's damages exceed the limits of Stoinoff's policy, Stoinoff's vehicle qualifies as an underinsured motor vehicle. However, Chandler must also qualify as an "insured" under the policy issued by Defendant to be afforded UIM coverage. On this point, the policy reads as follows:

**B.     Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1.     An individual, then the following are "insureds":

4

      a.      The Named Insured and any "family members".

      b.      Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

      c.      Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2.    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

      a.      Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

      b.      Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Since the Commonwealth of Kentucky is the named insured on the policy, Chandler would not qualify as an insured under section B.1. of the policy. This is not disputed. Section B.2. controls when an entity other than an individual is the named insured. Plaintiff argues that decedent was "occupying" a covered auto (the DOT truck) at the time of the collision and was therefore an insured. Defendant argues Chandler was not "occupying" the vehicle as defined by the policy and Kentucky law.

The endorsement defines "occupying" as "in, upon, getting in, on, out or off." Arguably Chandler, standing next to the vehicle, was "upon" it as required by the policy language, since he was in approximate contact with the truck. *See Kentucky Farm Bureau Mut. Ins. Co. v. Gray,* 814 S.W.2d 928, 930 (Ky. Ct. App. 1991)(claimant, while replacing battery of vehicle, considered "upon" the vehicle and therefore "occupying" it for uninsured benefit purposes). This policy definition, though, is not the sole resource for interpreting

this provision. The parties agree that, in addition to the policy language, Kentucky case law, namely *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney,* 831 S.W.2d 164 (Ky. 1992), also controls the scope of what constitutes "occupying" a covered or insured vehicle for purposes of invoking insurance coverage.

In *McKinney*, Diana Reed was driving a pickup truck owned by her father-in-law when, as she attempted to turn into the driveway of her home, the truck became disabled such that it was partially blocking traffic. Her husband stayed with the vehicle, while Mrs. Reed walked a distance between 130 and 200 feet away in order to direct traffic around the truck. While doing so, she was struck and killed by a passing motorist. *McKinney,* 831 S.W.2d at 165. In determining whether Mrs. Reed was an "insured" under the father-in-law's policy for purposes of seeking uninsured motorist coverage, the Kentucky Supreme Court held that Mrs. Reed was "occupying" the vehicle when she was struck.

In reaching this conclusion, the court first noted that the policy's definition of "occupying" – defined as "in or upon or entering into or alighting from" – was more limiting than the broad coverage afforded under the uninsured motorist statute. *Id.* at 166. The court found that, to be an "insured," Mrs. Reed was not limited to the literal application of the policy's definition of being physically in, upon, getting in, or alighting from the truck at the precise moment of being struck. *Id.* at 167. It instead concluded "that Kentucky should adhere to its stated policy of liberally construing insurance contracts in favor of the asserted 'insured' to provide insurance coverage and thereby make insurance effective[.]" *Id.* The Court identified a four-part test for considering whether one "occupies" a vehicle for insurance purposes: (1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, though the person need not

be touching it; (3) the person must be vehicle oriented at the time, rather than highway or sidewalk oriented, at the time; and (4) the person must at the time also be engaged in a transaction essential to the use of the vehicle. *Id.* at 168. This test from *McKinney* has also been applied by the Kentucky courts to claims involving UIM coverage. *See Transport Ins. Co. v. Ford,* 886 S.W.2d 901, 902-03 (Ky. Ct. App. 1994).

     While in the present case the parties agree that *McKinney* provides the governing standard, they do not agree on the application of the four factors. More specifically, Defendant does not dispute that Plaintiff has satisfied factors (1), (2) and (4) above. However, Defendant asserts the undisputed facts evidence that at the time Franklin Chandler was struck, he was highway oriented, rather than vehicle oriented, and therefore was not "occupying" the truck so as to be an insured.

     Factually, it is undisputed that Chandler was standing at the driver-side rear of the DOT truck prior to impact. However, Defendant protests the conclusiveness of whether Chandler was flagging traffic, arguing Rice testified he could not really see what Chandler was doing at the time, and Schneider testified Chandler had not used the flagging device. Defendant offers that even if it were assumed that Chandler was flagging traffic, he nonetheless was doing so for the safety of the workers and highway travelers, and so was highway rather than vehicle oriented.

     In response, Plaintiff submits that the unrebutted evidence was that Chandler had returned to the truck to pack up for lunch and that, as he stood beside the truck flagging traffic, he was struck and killed. This conduct of flagging traffic, submits Plaintiff, is factually similar to Mrs. Reed's conduct in *McKinney*. And in this case Chandler had already returned to the vehicle and was in closer geographic proximity to it than had been Mrs. Reed.

7

The evidence supports the conclusion that Chandler was in fact vehicle oriented under Kentucky law. While Defendant declares that Chandler was protecting the crew and traveling public and so was highway oriented, this was not his exclusive focus. Schneider was not present in the minutes before impact. And Rice, who was present, said Chandler took the "slow-stop" paddle from the truck and was flagging traffic. But regardless of whether Chandler was flagging, it is undisputed he was a DOT employee, standing in the roadway with a reflective safety vest, watching traffic and close enough to the truck to touch it. Similar to *McKinney,* he was "attempting to carry out the reasonable act of protecting not only the insured disabled vehicle, but also all other persons and vehicles using that highway on that particular occasion." *McKinney,* 831 S.W.2d at 167. This status evidences that while it may not have been the sole focus, protecting the DOT's insured vehicle was one of Chandler's concerns. Chandler had been driving the truck that morning. He had stopped the vehicle in the travel lane at earlier sign placement locations, and subsequently moved the vehicle further along the road. The accident likely would not have occurred without the use of the DOT truck. In the seconds before impact Chandler's attention, at least in part, was directed to the vehicle and its position in the lane of travel.

Defendant suggests that being vehicle oriented is premised upon a requirement the vehicle be "disabled," and points out that the two cases cited by Plaintiff – *McKinney* and *Kentucky Farm Bureau Mutual Insurance Co. v. Gray,* 814 S.W.2d 928 (Ky. 1991), both involved disabled vehicles. Certainly whether one is tending to a circumstance created by the mechanical disability of a vehicle could necessitate conduct that is vehicle oriented. However, while *McKinney* and *Gray* both involved situations where the vehicle claimed to be "occupied" by the insured was inoperable for some reason, those cases did not mandate a disabled status for the vehicle was a precondition for whether one is "occupying" an

8

insured vehicle. In *McKinney* Mrs. Reed was protecting the vehicle because it was "disabled" in that it had stalled or became stuck and so was not capable of being moved. Though the DOT truck was not disabled in the sense of being mechanically inoperable, it like the Reed truck was stopped and constituted an obstruction in the public roadway, necessitated by the crew's work. Being focused upon the vehicle so as to protect it is similar in both situations, whatever the cause for the vehicles to be in the traveled highway. And at least one Kentucky case involved an employee "occupying" a nondisabled insured work vehicle. *See Philadelphia Indem. Ins. Co. v. Morris,* 990 S.W.2d 621, 626 (Ky. 1999)(sanitation worker struck and injured while loading insured garbage truck was intended to benefit from UIM coverage requiring person occupy insured vehicle). In summary, the Court finds that immediately prior to impact Frank Chandler "occupied" the insured DOT vehicle as that insurance coverage provision is interpreted under Kentucky law.

    **3.    Was the DOT truck a covered auto under Section B.2.a. of the UIM endorsement?**

In its cross Motion for Summary Judgment, American Guarantee contends not only that the UIM coverage endorsement requires Chandler be "occupying" the vehicle to qualify as an insured, but also requires that the insured DOT truck be "disabled" immediately prior to the accident. To the extent this argument was asserted as part of whether one "occupies" an insured vehicle, it has already been addressed above. However, Defendant submits an additional argument in this regard. Namely, that the plain language of

subsection B.2.a. of the endorsement[2] requires a covered auto be disabled for one to be an insured eligible for UIM coverage.

The gist of Defendant's argument is that the second sentence qualifies the words "covered auto." In other words, Chandler must occupy a covered auto to qualify as an insured, but covered auto is limited to situations where that auto is disabled -- "out of service because of its breakdown, repair, servicing, "loss" or destruction." Plaintiff, of course, protests this interpretation, and submits that the second sentence simply explains the circumstances which give rise to a temporary substitute becoming an auto covered by the endorsement. That is, a temporary substitute can qualify where the covered auto is out of service because of its breakdown, repair, servicing, loss or destruction.

Defendant's contention is puzzling, given the parties' Agreed Stipulations. That document, at paragraph 15, states:

> The only legal issue to be determined by this Court is whether, at the time of the accident, Chandler was "occupying" the covered vehicle as defined by the policy of insurance, Kentucky Statutes, and Kentucky case law. There may still be a factual question as to the extent to which Chandler[']s damages exceed the liability limits of defendant Stoinoff.

This qualification on what constitutes a covered auto is not identified in the Stipulation as an issue for the Court's consideration. Moreover, paragraph 12 of the parties' Stipulations states that the DOT truck Chandler was operating was covered by the Defendant's policy. Defendant's argument, though presented as a challenge to whether Chandler qualifies as an insured, indirectly attacks whether the DOT truck is an auto covered by the policy, despite the representation of paragraph 12. However, since Defendant's argument on this

---

[2]As previously quoted, this section reads:
   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

10

point is unavailing, analysis of whether this issue is barred by the parties' Stipulations is unnecessary.

The declarations page for the policy reflects the Commonwealth's payment included UIM coverage for six covered autos. Since the named insured on the policy is not an individual, section B.2. would be the provision looked to in determining who qualifies as an "insured" entitled to UIM coverage under Section A of the endorsement.

Essentially, Defendant says for UIM to apply under section B.2.a., the purported insured must be occupying a covered auto that is "out of service because of its breakdown, repair, servicing, 'loss' or destruction," or an auto temporarily substituted because of that condition. There are several flaws to this policy construction. One, this is not the actual structure of the sentences. Had Defendant desired to use such word structure, in such order, it could have done so. Two, to accept such an interpretation would make the UIM coverage procured by the Commonwealth virtually illusory. While the declarations page notes there are six covered autos under UIM coverage specifically, the practical reality of Defendant's construction is that these covered autos are not, in fact, covered if they are mechanically sound. This is a restriction contrary to the policy declarations and not expressly provided for in the Additional Definitions, Section F, of the UIM coverage endorsement. Three, such a limitation would be inconsistent with Kentucky's UIM statute.

> Every insurer shall make available upon request to its insureds UIM coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

K.R.S. § 304.39-320(2). "The clear intent of the [UIM] statute is to allow an insured to purchase additional coverage so as to be fully compensated for damages when injured by the fault of another individual." *Nationwide Mut. Ins. Co. v. Hatfield,* 122 S.W.3d 36, 40 (Ky. 2003).

Moreover, insurance policies are often comprised of standardized provisions. This particular UIM policy language is not unique, though Defendant's construction and interpretation of it is. There have been a number of cases involving policy language identical to that at issue here. Those decisions involved various other issues surrounding whether UIM coverage applied – Is a private auto of a corporate employee a covered auto? What constitutes a temporary substitute vehicle? Or whether an employee can be viewed as a named insured on a corporate policy, and thereby entitle his family member to UIM benefits? But in none of those cases was the issue raised of whether a reasonable construction of this language imposed a mechanically disabled qualification upon what constitutes a covered auto. Nor has Defendant cited any binding or persuasive authority addressing and accepting the policy construction it advances here.

Under Defendant's interpretation, one occupying an otherwise covered auto that was in working order would <u>never</u> receive the benefit of underinsured coverage. This interpretation is illogical. It would mean that if a vehicle was an auto listed under the policy as covered, an insured would still have to prove he was occupying that listed auto while it was out of service to qualify for UIM coverage, yet the same insured could be occupying a nondisabled temporary substitute auto and be covered. According to Defendant's interpretation, if decedent had actually been inside of the truck with his coworkers driving away when Stoinoff struck the vehicle and fatally injured him, the truck's operational status would disqualify Chandler from receiving UIM benefits, that is unless he were driving a

temporary substitute truck because the DOT truck was disabled. A legitimate purpose and logical basis for such distinction in coverage is lacking.

Limiting UIM in this manner would run afoul of the scope of UIM coverage provided for by the statute and purchased by the Commonwealth. Kentucky courts have stricken UIM coverage limitations not consistent with the statute. *See Nationwide Mut. Ins. Co. v. Hatfield,* 122 S.W.3d 36 (Ky. 2003)(rejecting as outside the intent of Kentucky's UIM statute the exclusion of government-owned vehicles from policy's definition of "underinsured motor vehicle"); *Allstate Ins. Co. v. Dicke,* 862 S.W.2d 327 (Ky. 1993)(holding anti-stacking clause in UIM coverage provision void as against public policy, noting such a prohibition would serve to eliminate an item of coverage purchased by the insured, which would be manifestly inconsistent with the UIM statute and so beyond permissible policy terms and conditions).

Given Kentucky's policy of construing insurance policies to give effect to this coverage, this second sentence cannot be interpreted as validly limiting UIM coverage to only those covered autos out of service or resulting temporary substitute autos. The only *reasonable* interpretation consistent with both the overall purpose of the policy, the UIM endorsement, and the statute is that the second sentence of section B.2.a of the policy explains what constitutes a temporary substitute vehicle, a phrase otherwise undefined under the endorsement.

The second sentence of section B.2.a. determines when a temporary substitute vehicle qualifies as a covered auto. That is, a vehicle qualifies as a temporary substitute vehicle under the policy when the regularly covered auto is out of service because of breakdown, repair, servicing, loss, or destruction. Kentucy courts have used this distinction in interpreting coverage questions. *See Hartford Accident & Indemnity's Co. v. Western Fire*

13

*Insurance Co.*, 196 F.Supp. 419 (E.D. Ky. 1961) (pick-up truck being driven by insured was not within coverage where the described automobile was not being used at the time of the accident, not because of the breakdown, but because the insured preferred to use an old truck rather than the automobile to travel over rough roads). Requiring covered autos to be disabled for UIM coverage to be implicated is simply illogical.

For all of these reasons, the Court's construction gives effect to this coverage that is consistent with the overall policy, with the statute, and with Kentucky law on policy construction. *Nationwide Mut. Ins. Co. v. Hatfield,* 122 S.W.3d at 40 ("Where a policy of insurance is susceptible to two interpretations, the insured is entitled to the interpretation most favorable to the extension of coverage."); *McKinney,* 831 S.W.2d at 167 ("Kentucky should adhere to its stated policy of liberally construing insurance contracts in favor of the asserted 'insured' to provide insurance coverage and thereby make insurance effective").

## CONCLUSION

Based on the foregoing, the Court finds that decedent Chandler was occupying a covered auto at the time of the motor vehicle collision at issue and, accordingly, that his Estate is entitled to summary judgment on the issue of coverage under the underinsured motorist endorsement of the American Guarantee policy. Therefore,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #11) is hereby **granted,** and that Defendant's Motion for Summary Judgment (Doc. #16) is hereby **denied.** The Court makes no ruling at this time as to the extent of the UIM coverage for Plaintiff's injuries and damages.

This 15th day of September, 2005.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\Opinions\2-04-226-MSJ.wpd